Argued and submitted June 13, on appeal, reversed and remanded for entry of judgment in favor of defendants on plaintiffs' fourth claim for relief; supplemental judgment for attorney fees reversed; on cross-appeal, judgment reversed and remanded November 19, 2008

Jason CHEESEMAN
and Dean Killingbeck,
*Plaintiffs-Respondents,
Cross-Appellants,*

*v.*

JACKSON & PERKINS WHOLESALE, INC.,
a Delaware corporation,
and Bear Creek Gardens, Inc.,
*Defendants-Appellants,
Cross-Respondents,*

*and*

DOES 1 THROUGH 10,
*Defendants.*

Jackson County Circuit Court
034356L3; A131335

197 P3d 527

Brenda K. Baumgart argued the cause for appellants - cross-respondents. With her on the briefs were Bradley F. Tellam and Barran Liebman LLP.

Megan B. Annand argued the cause for respondents - cross-appellants. With her on the briefs was Law Office of Megan B. Annand.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

### EDMONDS, P. J.

Plaintiffs are former sales representatives for defendant.[1] After resigning from their employment in November 2002, plaintiffs asserted breach of contract and wage claims against defendant. Plaintiffs' claims allege that they were owed vacation and holiday pay, and that defendant failed to pay in a timely manner the amount of wages that defendant conceded were due, as required by ORS 652.160. Plaintiffs and defendant both moved for summary judgment under ORCP 47. The trial court ruled in defendant's favor on plaintiffs' first three claims for relief, but granted summary judgment in plaintiffs' favor on their claim under ORS 652.160. Defendant appeals the judgment against it, arguing that the trial court should have granted judgment in its favor on the ORS 652.160 claim as well. On cross-appeal, plaintiffs contend that they were entitled as a matter of law to additional vacation and holiday pay, as well as penalty wages, under their first three claims for relief. We reverse on appeal and reverse and remand on cross-appeal.

Plaintiffs were commissioned sales representatives for defendant and sold roses to retail nurseries and hardware stores.[2] They were employed by defendant pursuant to annual contracts, which set forth the terms and conditions of their employment. From the early 1990s until 2001, plaintiffs' annual employment contracts contained the following term:

"4.   Sales Representative's Benefits and Expenses.

"(a)  Benefits. During the term of engagement under the Agreement, the Sales Representative shall be eligible to participate in all employee plans and fringe benefit programs maintained by [defendant], subject in each case to the generally applicable terms and conditions of the plan or program in question."

(Underscoring in original.)

---

[1] Defendant Bear Creek Gardens, Inc., is the predecessor to defendant Jackson & Perkins Wholesale, Inc. For clarity, we refer throughout this opinion to defendant in the singular.

[2] Many of the relevant facts are undisputed. To the extent that there are disputed issues of fact, we address them in more detail under the various assignments of error.

On various occasions, plaintiffs asked their managers whether, under that provision of the employment contract, commissioned sales representatives were entitled to vacation pay and holiday pay comparable to defendant's salaried and hourly employees. In plaintiffs' view, defendant's fringe benefit plans included paid holidays and vacations, and they were entitled to participate in those benefit programs under paragraph 4(a) of the employment contracts. We pause to note that the record on summary judgment is not clear as to the exact terms of defendant's applicable policies regarding holiday and vacation pay. Plaintiffs did not submit a written policy or employee handbook concerning vacation and holiday pay along with their motion, and both plaintiffs claimed that they were not provided with any such written policy. Defendant, on the other hand, offered documents that appear to be a vacation policy issued in 1991 and a holiday policy issued in 1992, but defendant offered no definitive testimony from any witnesses that those policies were in effect during the times relevant to plaintiffs' claims or that plaintiffs ever received those written policies. Those evidentiary shortcomings notwithstanding, the parties appear to agree that (1) salaried and hourly employees received "paid" holidays and vacation under defendant's policies; (2) no language in the employee handbook or other employment policy specifically addressed the calculation of holiday pay or vacation pay for *commissioned* salespersons; and (3) plaintiffs did not actually receive holiday or vacation pay in addition to their commissions during the years in question.

In 2001, as a result of plaintiffs' inquiries, defendant modified paragraph 4(a) of the employment contract. Defendant's sales manager explained to the sales representatives that, "[w]hen in a fully commission position, paid time-off benefits make no sense. Therefore, paid time-off benefits *are no longer part of the benefits' package*." (Emphasis added.) Paragraph 4(a), as modified in the 2001 version of the contract, provided:

> "Benefits. During the term of employment under the Agreement, the Sales Representative shall be eligible to participate in all employee plans and fringe benefit programs maintained by [defendant], subject in each case to

the generally applicable terms and conditions of the plan or program in question, *except that Sales Representatives shall not participate in any Company benefit relating to paid time off, for example but not limited to, vacation, bereavement, jury duty, etc. All accrued vacation time may be used at the rate of 2 weeks per year and any remaining vacation time will be paid in full at the termination of Sales Representatives employment. The hourly rate for payment of all accrued vacation time will be based on the commission earned and paid for the 2000 - 2001 season ending June 30, 2001.*"

(Emphasis added; underscore in original.) In July 2001, plaintiffs entered into a new employment contract that contained the above language. Based on his years of service, plaintiff Cheeseman had accrued 300 vacation hours at that time. Defendant calculated plaintiff Killingbeck's accrual at approximately 207 vacation hours. Killingbeck, however, asked defendant to increase his accrual to 300 hours, which he believed to be the maximum accrual amount. Defendant agreed to the increase.

In 2002, plaintiffs entered into what would be their final employment contracts with defendant. Those contracts contained yet another version of paragraph 4(a):

"Benefits. During the term of employment under the Agreement, the Sales Representative shall be eligible to participate in all employee plans and fringe benefit programs maintained by [defendant], subject in each case to the generally applicable terms and conditions of the plan or program in question, *except that Sales Representatives shall not participate in any Company benefit relating to paid time off, for example but not limited to, vacation, bereavement, jury duty, etc.*"

(Emphasis added; underscore in original.)

Effective November 30, 2002, plaintiffs voluntarily resigned their positions with defendant. On December 2, 2002, the next business day after plaintiffs' employment terminated, defendant tendered checks to plaintiffs for 300 hours of vacation pay, calculated at the rate set forth in the July 2001 contracts. Plaintiffs returned those checks to defendant, however, on the ground that defendant owed amounts for vacation and holiday pay beyond the amounts tendered. Later that month, defendant again sent the checks

to plaintiffs, along with a letter that explained that "the check [plaintiffs] returned is correct and represents your full entitlement." Plaintiffs again refused the checks.

In February 2003, defendant's legal counsel sent letters to plaintiffs that included the following explanation:

"Your January 31, 2003 letter was forwarded to my office for response. After yet another thorough review of the correspondence, notes, policies and application, I have confirmed that the check that has been tendered to you on [previous] occasions is correct. The calculation of that amount, the vacation accrual policy and all related matters has been explained to you in detail. Our position in regard to this matter remains the same.

"I will hold the check in my file. Please advise me if you would like the check at which time I will return it to you one final time."

Plaintiffs did not request the checks but instead filed this action in December 2003. In their first claim for relief, plaintiffs alleged that they "were entitled to be paid for holidays, vacation time and related wages" that defendant had refused to pay when those wages were due as required by ORS 652.120. In their second claim for relief, plaintiffs alleged a failure to pay wages at termination in violation of ORS 652.150. That statute sets forth certain penalties in the event that an employer "willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145 * * *." ORS 652.150. Plaintiffs' third claim, breach of contract, alleged that defendant "contracted to pay plaintiffs for holiday, vacation and related wages and failed to do [so]."

After initiating this action, plaintiffs' counsel requested that defendant reissue the previously sent checks. Defendant responded by sending the checks along with a letter stating, "Enclosed please find two new checks to replace the previous checks that had been sent several times to [plaintiffs]. I have also enclosed copies of the old checks for your review and consideration." Plaintiffs' counsel responded with a letter expressing her concern that nothing in defendant's letter states that "the checks are for the amount which

is conceded by [defendant] to be owed to [plaintiffs], nor do the checks themselves state that they are for the conceded amount." Plaintiffs' counsel concluded her letter, "Unless I hear from you otherwise by March 12, 2004, we will assume that the checks are for the conceded amount and release them to [plaintiffs]." Defendant's counsel responded to that letter on March 19, confirming that the checks were provided for 300 hours of vacation pay at plaintiffs' hourly rates for 2000-2001, less taxes and 401(k) withholdings. The letter concluded, "[Defendant] has provided these checks to you and your clients in payment for all vacation due and owing to [plaintiffs]." In a subsequent exchange of letters, plaintiffs' counsel reiterated her desire for "something saying that [the checks] are the conceded or undisputed amounts"; defendant's counsel responded, in part,

> "[Defendant] does not dispute that it owes the amount of the checks for vacation. However, because you have not been able to articulate your position regarding the amount of vacation pay you seek and the basis on which you seek that vacation amount, I cannot characterize it as an undisputed amount."

The dispute over the checks spawned a fourth claim for relief, which plaintiffs alleged in an amended complaint in June 2004. In their fourth claim, plaintiffs alleged that defendant violated ORS 652.160. That statute provides:

> "In case of dispute over wages, the employer must pay, without condition, and within the time set by ORS 652.140, all wages conceded by the employer to be due, leaving the employee all remedies the employee might otherwise have or be entitled to as to any balance the employee might claim."

Eventually, the parties filed cross-motions for summary judgment. Defendant, for its part, argued that plaintiffs had failed to produce any evidence that, as commissioned employees, they were entitled to vacation pay and holiday pay beyond their full commissions; defendant further argued that, by tendering checks to plaintiffs, it had fully complied with Oregon's wage statutes. Plaintiffs, in their

motion, contended that deposition testimony by defendant's vice president of human resources, coupled with the language of the pre-2001 version of paragraph 4(a) in the employment contracts, established as a matter of law that plaintiffs were entitled to vacation pay and holiday pay in addition to the commissions that they were paid and in addition to the amount tendered by defendant.

The trial court ultimately agreed with defendant regarding plaintiffs' entitlement to vacation and holiday pay in addition to the amount tendered to plaintiffs, and it granted defendant's motion for summary judgment on plaintiffs' first three claims for relief. The court agreed with plaintiffs' argument regarding the tendered checks, however, concluding that defendant had violated ORS 652.160 by failing to "pay, without condition * * * all wages conceded by the employer to be due * * *." The trial court also awarded penalty wages, prejudgment interest, and attorney fees in favor of plaintiffs.

On appeal, defendant argues that the trial court should have denied plaintiffs' motion for summary judgment on the fourth claim for relief and instead should have entered judgment in favor of defendant. For the reasons that follow, we agree that, as a matter of law, defendant did not violate ORS 652.160, and that the judgment and supplemental judgment against defendant must be reversed.

■ Initially, defendant contends that a violation of ORS 652.160 does not give rise to a private right of action. We need not resolve that issue in this case; even assuming that a violation of ORS 652.160 can give rise to a private right of action, the trial court should have granted defendant's motion for summary judgment in this case. As set forth above, ORS 652.160 provides that, in the event of a wage dispute, an employer "must pay, without condition, and within the time set by ORS 652.140, all wages conceded by the employer to be due, leaving the employee all remedies the employee might otherwise have or be entitled to as to any balance the employee might claim."

Here, the parties' dispute under ORS 652.160 is exceedingly narrow. There is no dispute that defendant

tendered payment to plaintiffs for the full amount of vacation pay that it believed plaintiffs were owed under their employment contracts; that is, plaintiffs do not argue that defendant tendered checks for *less than* the conceded amount. Nor is there any dispute as to whether the tender was made "within the time required by ORS 652.140." Rather, plaintiffs' sole contention is that, by refusing to accompany that payment with an explicit representation that the payment was for a "conceded" or "undisputed" amount, defendant "violated the spirit of the statute." The trial court agreed with plaintiffs' argument, reasoning that "[a] simple acknowledgment by [defendant] when queried that these checks were in the amount conceded to be due was required under the statute, as the facts are set forth in this case."

The preliminary question before us on appeal is one of statutory construction: Does ORS 652.160 require, as the trial court concluded, an express acknowledgment that the tendered payment is for a "conceded" amount? We resolve that question by first examining the statute's text and context and by applying rules of statutory construction that bear directly on the interpretation of the statutory provision at issue. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). One such rule is that the court is not to "insert what has been omitted, or to omit what has been inserted[.]" ORS 174.010.

Nothing in the text of ORS 652.160 suggests that payment from an employer must be accompanied by an explicit acknowledgment that the payment is for the "conceded" or "undisputed" amount. ORS 652.160. Rather, the text of the statute indicates that the term "conceded" simply describes those wages that must be tendered—that is, the wages that the employer agrees that the employee is owed. The only requirements that the statute imposes regarding the nature of the payment are (1) that the payment be "without condition" and (2) that it be made within the time required by ORS 652.140. Thus, the trial court erred in inserting an additional requirement—an express acknowledgment that the tender is for a "conceded" amount—that does not appear in the text of the statute. ORS 174.010.

Plaintiffs also argue that defendant's payment was not "without condition" for purposes of the statute because plaintiffs had a "legitimate concern" that, if they were to endorse the checks tendered by defendant, defendant would later argue that plaintiffs had given up their claims to any additional vacation or holiday pay—*i.e.*, that defendant would assert a defense of accord and satisfaction. Plaintiffs' concerns about the legal effect of accepting payment—legitimate or not—are not evidence that defendant's payment was conditional. Defendant has never disputed that plaintiffs were owed wages in the amount of the tendered checks, and it has never indicated that the payments to plaintiffs were conditional in any way.

The undisputed facts establish that defendant tendered the full amount that it conceded plaintiffs were owed and that it did so without condition and within the time required by ORS 652.160. Regardless of the legitimacy of plaintiffs' concerns about accepting the payment, defendant did all that the statute required. For that reason, the trial court erred in granting plaintiffs' motion for summary judgment and in denying defendant's motion. We therefore reverse the judgment in favor of plaintiffs on their fourth claim for relief. We also necessarily reverse the award of attorney fees to plaintiffs. ORS 20.220(3) ("If the appellate court reverses the judgment, the award of attorney fees or costs and disbursements shall be deemed reversed[.]").

We turn, then, to plaintiffs' cross-appeal. On cross-appeal, plaintiffs contend that the trial court erred in granting defendant's motion for summary judgment on their first three claims for relief. According to plaintiffs, the court should have granted *their* motion for summary judgment on all three claims and should have awarded penalty wages and prejudgment interest on those claims. We conclude that genuine issues of material fact preclude summary judgment for either plaintiffs or defendant on the first three claims for relief, and we therefore reverse and remand on plaintiffs' cross-appeal.

Each of plaintiffs' first three claims is predicated on the theory that plaintiffs were entitled to "paid vacation" and "paid holidays" for each contract year before 2001. According

to plaintiffs, whenever they took vacations, defendant engaged in a bookkeeping maneuver that effectively reduced their commissions by the amount of "paid vacation." That is, after plaintiffs took vacation time, their pay stubs from defendant reflected (1) a reduction of their accrued vacation time; and (2) a transfer of money from the "commissions" category of the pay stub to the "vacation" category, thereby reducing plaintiffs' accrued commissions. Thus, plaintiffs contend that they essentially paid for their own vacations out of their commissions.[3] In plaintiffs' view, instead of reducing their accrued vacation time in that manner, defendant should have paid them for vacation time at an hourly rate calculated by dividing their commissions for a given year by 2,080 (40 hours per week for 52 weeks). They also claim that defendant should have paid them similarly for holidays. The net result under plaintiffs' theory is that they are entitled to compensation for paid vacations and holidays before 2001 in addition to their commissions for those years in an amount greater than that tendered by defendant. Defendant contends that no such policy existed and that nothing in plaintiffs' employment contracts entitled them to such benefits; for that reason, defendant argues, the trial court properly granted summary judgment as to each claim.

In reviewing the trial court's grant of summary judgment on the first three claims for relief, we view the facts and all reasonable inferences that may be drawn from them in favor of plaintiffs, the nonmoving parties. *Scott v. State Farm Mutual Auto. Ins.*, 345 Or 146, 148, 190 P3d 372 (2008). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C.

In arguing that the trial court erred in granting defendant's motion for summary judgment—and in denying their own motion—plaintiffs rely on the following evidence:

---

[3] It appears to be undisputed that plaintiffs were compensated based solely on commission and did not receive a predetermined, guaranteed salary. Each month, plaintiffs received a monthly advance. At the end of the year, defendant reconciled the difference between plaintiffs' earned commissions and the sum of their advances. In the event that their monthly advances exceeded their earned commissions, plaintiffs were required to repay the difference to the company.

1. Prior to 2001, the employment agreement provided that sales representatives "shall be eligible to participate in all employee plans and fringe benefit programs maintained by [defendant]."

2. Defendant's vice president of human resources testified that plaintiffs were entitled to "paid vacation" and "to holidays and they would earn their regular pay."

3. When the contract was modified in 2001, defendant's sales manager explained that, "When in a fully commission position, paid time-off benefits *make no sense. Therefore, paid time-off benefits are no longer part of the benefits package*." (Emphasis by plaintiffs.)

4. Defendant did not offer evidence that plaintiffs were provided any vacation policy and "could not even say that the vacation policy offered at plaintiffs' deposition was the policy in effect during the applicable periods."

Based on the above evidence, plaintiffs argue that they demonstrated, as a matter of law, that, prior to 2001, defendant promised to pay them wages that included vacation and holiday pay above and beyond their commissions. According to plaintiffs, they

> "reasonably expected their vacation wages would be paid by defendant, rather than out of commissions they had already earned. If a commissioned employee is not paid from company funds, but instead out of the commissions *already earned* by the employee, the employee in reality receives no holiday or vacation benefit."

(Emphasis by plaintiffs.)

■ In our view, neither plaintiffs nor defendant have demonstrated, as a matter of law, that their proposed interpretation of the pre-2001 employment contract is correct. Preliminarily, we conclude that the contractual term at issue in this case—paragraph 4(a) of the employment contract—does not, by itself, resolve this dispute. That provision, before being modified in 2001, provided that plaintiffs were "eligible to participate in all employee plans and fringe benefit programs maintained by [defendant]." Plaintiffs contend that that paragraph plainly establishes their right to vacation and holiday benefits beyond their commissions. We disagree. Paragraph 4(a) establishes only that plaintiffs were eligible to

participate in "employee plans and fringe benefit programs" and that plaintiffs were "subject in each case to the generally applicable terms and conditions of the plan or program in question[.]" As we noted earlier, the written terms of defendant's vacation and holiday policies during the relevant period are not part of the summary judgment record. Rather than relying on any written recitation of defendant's programs and benefit plans, plaintiffs rely on deposition testimony from Purdy, defendant's vice president of human resources, and statements by Anderson, defendant's sales manager, to the effect that plaintiffs were entitled to "paid vacation" and "paid holidays" before 2001. In her deposition, Purdy testified as follows:

"[Plaintiffs' counsel]:   And was one of the fringe benefit programs vacation pay?

"[Purdy]:   No, not vacation pay, vacation, yes.

"[Plaintiff's counsel]:   Well, it's only a benefit if you actually get paid while you're on vacation, right?

"[Defendant's counsel]:   Object to the form. You can go ahead.

"[Purdy]:   The benefit is that you're employed, but you're not working.

"[Plaintiffs' counsel]:   Okay, I understand. So what you're saying, you're employed, you have a job, but you're not at your job, you can be somewhere else?

"[Purdy]:   That's the benefit.

"[Plaintiffs' counsel]:   So, under this term 4(a), as you understand it, the salesmen would have been entitled to vacation?

"[Purdy]:   Yes.

"[Plaintiffs' counsel]:   And paid vacation, right?

"[Purdy]:   Yes.

"[Plaintiffs' counsel]:   And they would be entitled to paid holidays?

"[Purdy]:   To holidays and they would earn their regular pay."

Based on that testimony, plaintiffs contend that Purdy admitted that they were entitled to pay beyond their commissions for vacations and holidays. Purdy's testimony, however, is subject to competing inferences. One inference is the inference that plaintiffs draw. Another inference, however, from the context of Purdy's testimony, is that she was referring to "paid vacation" and "paid holidays" as days when plaintiffs did not work but where their commissions were not *reduced* because of their absence from work. For purposes of ORCP 47, those competing inferences create a genuine issue of material fact regarding whether defendant's benefit plan provided vacation or holiday compensation in addition to the commissions that plaintiffs earned.

Anderson's letter to plaintiffs also provides some evidentiary support for plaintiffs' claims that vacation and holiday pay were additional compensation under defendants' pre-2001 employment contracts. As noted above, Anderson told plaintiffs that paid time-off benefits *"are no longer part* of the benefits' package." That statement, viewed in the light most favorable to plaintiffs, suggests by negative implication that "paid time-off benefits" were part of the benefits package before the modifications to paragraph 4(a) in 2001. But that evidence suffers from the same flaw as Purdy's testimony: the evidence does not identify the nature of those benefits— *i.e.*, whether they constituted *additional* compensation or merely an agreement that plaintiffs were entitled to vacation days and holidays without any reduction of their commissions.

On the record before us, we are simply not in a position to resolve the question of what benefits were provided by defendant's pre-2001 compensation plan. As noted above, there are disputed issues of fact as to what the holiday and vacation policies were. Although defendant relies on two written policies, there are genuine issues of material fact as to whether those policies were in effect at the relevant times and were therefore part of the employment contracts that plaintiffs entered into. In sum, the meaning of paragraph 4(a) of the pre-2001 employment contracts is ambiguous on this record, and there are issues of fact surrounding the meaning of that paragraph that cannot be resolved on the

summary judgment record. Thus, on this record, a trier of fact must determine what the parties actually intended regarding plaintiffs' compensation for vacation and holidays.

Defendant also argues that, regardless of the dispute over "paid" benefits, defendant's "policy and practice unambiguously was that it did not provide employees with pay in lieu of vacation, except upon separation of employment." Defendant further asserts that the accrual of vacation benefits was capped at 300 hours, by plaintiffs' own admission. Thus, in defendant's view, plaintiffs received all the vacation pay that they were entitled to—300 hours at termination—and the trial court's grant of summary judgment should be affirmed. There are a number of problems with that argument. For one, it does not resolve the issue of holiday pay, which, if owed to plaintiffs under the policies, should have been paid; because each of plaintiffs' first three claims was for *both* holiday and vacation pay, a disputed issue of fact regarding holiday pay precludes summary judgment on the claims regardless of the issue of vacation pay. Moreover, defendant's contention that plaintiffs were entitled to vacation pay only upon termination of employment appears to be based entirely on the written vacation policy. As explained above, the evidence does not establish as a matter of law that that written policy was the one in effect at the time relevant to plaintiffs' claims.[4] For that reason and the others stated above, we conclude that the trial court erred in granting defendant's motion for summary judgment on the first three claims for relief—all of which depend on the meaning of the employment contracts—and correctly denied plaintiffs' motion.[5]

---

[4] Also, assuming for the sake of argument that plaintiffs were entitled to "paid vacations" in addition to their commissions, it is not clear how the 300-hour cap and policy against payment "in lieu of vacation" would resolve any factual dispute regarding vacation time that plaintiffs actually took. As noted above, plaintiffs offered evidence that, when they actually took "paid vacation," their accrual was reduced and they received no additional compensation. 224 Or App at 18-19.

[5] Plaintiffs also assign error to the trial court's failure to award penalty wages and prejudgment interest. Plaintiffs have not demonstrated the requisite entitlement to additional holiday or vacation pay at the summary judgment stage, and we reject plaintiffs' assignments of error regarding penalty wages and prejudgment interest without discussion.

On appeal, reversed and remanded for entry of judgment in favor of defendants on plaintiffs' fourth claim for relief; supplemental judgment for attorney fees reversed. On cross-appeal, judgment reversed and remanded.